# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

| | | |
|---|---|---|
| **RICARDO IGNACIO GILL,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **Case No. 3:18-cv-00725-BJD-JBT** |
| | ) | |
| **SECRETARY, FLORIDA** | ) | |
| **DEPT. OF CORRECTIONS, et al.,** | ) | |
| | ) | |
| Respondents. | ) | |

---

## Motion to Alter or Amend Judgment

Petitioner Ricardo Gill moves this Court to alter or amend its Judgment (Doc. 113) and Memorandum Opinion (Doc. 112) dismissing his Petition for Writ of Habeas Corpus and denying a Certificate of Appealability.

## I.   Introduction

This Court should alter or amend its opinion and grant relief or grant certificates of appealability. This motion addresses three complex questions of habeas law: When may the federal court consider evidence not presented in state court, when is trial counsel ineffective for not challenging the competency of his client or his own removal from a case, and how does *Martinez v. Ryan,* 566 U.S. 1 (2012), apply to a prisoner's case where he has been diligent and shown extraordinary circumstances? Mr. Gill respectfully suggests the Court misapprehended controlling legal standards governing when a federal court may consider previously unpresented evidence when it applied a bright line rule barring *any*

consideration of the unpresented rule. He also suggests the Court glossed over trial counsel's deficient investigation in ruling on Mr. Gill's *Strickland* claims. Finally, Mr. Gill suggests that *Martinez* establishes cause for failure to exhaust and, in light of the extraordinary circumstances in his case, this Court may consider previously unpresented evidence. These circumstances demonstrate manifest errors of law and fact sufficient to warrant relief under Federal Rule of Civil Procedure 59. They further are sufficiently complex, weighty issues, supported factually, to warrant further review. *Miller-El v. Cockrell,* 537 U.S. 322, 327 (2003). The motion to alter or amend should be granted.

## II.    Background

Mr. Gill suffers a significant brain defect and is severely mentally ill. (Doc. 112, Order, at 23–27). He filed a counseled Petition for Writ of Habeas Corpus raising several constitutional claims, including that the trial court stripped him of his right to counsel while he was incompetent, that counsel ineffectively failed to object to his own removal from the case, and that he was tried while incompetent. (Doc. 30, Petition, at 43–107). Mr. Gill acknowledged that his Petition was filed after the AEDPA statute of limitations period would normally expire but asserted that the statute of limitations should be equitably tolled. (*Id*. at 15–24). Respondent filed a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Mr. Gill's petition as time barred. (Doc. 62, Motion). The Court denied the motion to dismiss and found that equitable tolling was warranted. (Doc. 112, Order, at 22–33). The Court also reviewed and denied Mr. Gill's substantive claims and denied a certificate of appealability. (*Id*. at 99–100).

As relevant here, Mr. Gill offered the following evidence—which was not in the state court record—in support of his petition and in response to Respondent's Rule 12(b)(6) motion:[1]

1. The expert findings of neurologist Pamela Blake, MD, FAHS, opining that Mr. Gill suffers a significant brain defect that renders him incompetent (Doc. 30-2, Nov. 4, 2019 Report, Appx. 0001–13; Doc. 81-2, Sept. 20, 2021 Report, Appx. 0001–0010);

2. A declaration by Helen Elizabeth Cadiz, Ph.D., averring that she found Mr. Gill incompetent in her April 14, 2005 report and that if she had known about Mr. Gill's brain defect, she would have more strongly urged testing to determine whether Mr. Gill's mental problems were attributable to his brain pathology (Doc. 30-2, Nov. 1, 2019 Declaration, Appx. 0014);

3. Expert neuropsychologist Barry M. Crown, Ph.D.'s finding that Mr. Gill's reasoning ability is in the 0.1 percentile and that Mr. Gill is incompetent (Doc. 81-2, Sept. 24, 2021 Report, Appx. 0011–0015; Doc. 30-2, Oct. 25, 2019 Report, Appx. 0015–0017);

4. FDOC medical records demonstrating Mr. Gill's brain defect and significant mental disturbance (Doc 81-2, Appx. 0017–0116; Doc. 81-3, App. 0117–0436);

5. Excerpts from FDOC medical records attorney Doss attempted to submit at June 30, 2011, competency hearing. (Doc. 30-3, Medical Records, Appx. 0032–0051); and,

---

[1] Mr. Gill also offered an e-mail exchange between trial counsel Salmon and prosecutor Fleck reflecting that the prosecutor rebuffed trial counsel's request that Mr. Gill plead guilty to capital murder in exchange for the return of a "bauble" (a watch seized from Mr. Gill) (Doc 81-2, July 6, 2005 e-mail, Appx. 0016); a court-ordered assessment done by Clifford Levin, Ph.D., finding Mr. Gill "Incompetent to Proceed." (Doc. 30-2, Apr. 3, 2000 Report, Appx. 0019); an Alachua County Offense Report which details threats made to a Judge Cates under the directions of "MOJO," over whom Mr. Gill has no control (Doc. 30-3, Offense Report, Appx. 0020–0021; records from the Dozier School for Boys, a/k/a Florida School for Boys at Marianna (Doc. 30-3, Attendance Records, Appx. 0022–0025); Referral History of Florida Dept. of Health & Rehabilitation Services Children, Youth & Families (Doc. 30-3, Jul. 27, 1986 Report, Appx. 0026); and photographs of Gill after being beaten by prison guards (Doc. 30-3, Photos, Appx. 0027–0031).

6. Excerpts from FDOC medical records. (Doc. 30-3, DOC Records, Appx. 0052–0101).

Mr. Gill also acknowledged that the following claims either were in fact unexhausted or were arguably unexhausted but were nonetheless still subject to review pursuant to *Martinez v. Ryan,* 566 U.S. 1 (2012)[2]:

> Claim I: Mr. Gill's congenital brain malformation and other mental illnesses and defects rendered him incompetent to proceed to trial and to waive numerous rights. The trial court and trial counsel failed to protect Mr. Gill's right to be competent and to be represented by counsel. (*See* Doc. 30, Petition, at 71, 75, 81, 104, 106).

> Claim IV: Trial counsel's ineffective assistance prejudiced Mr. Gill in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments. *Strickland v. Washington,* 466 U.S. 668 (1984). (*See* Doc. 30, Petition, at 178).

Mr. Gill also acknowledged that the following claims either were in fact unexhausted or were arguably unexhausted but were nonetheless subject to review because they are not subject to a procedural bar:

> Claim I(D): The trial court and defense counsel failed in their duty to ensure Mr. Gill was competent when he was tried. (Doc. 30, Petition, at 57-71); and

> Claim I(E): The trial court and trial counsel failed to protect Mr. Gill's right to counsel. (Doc. 30, Petition, 72–76).

The Court found that the previously unconsidered evidence was sufficiently compelling to establish extraordinary circumstances and granted equitable tolling. (Doc. 112, Order, at 16, 10, 25 n.17). However, in addressing Mr. Gill's constitutional claims

---

[2] The Court did not make any findings pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012). *See generally* (Doc 112, Memorandum Opinion; Doc 113, Judgment)

for relief, the Court applied a bright-line rule that it could not consider any evidence that had not been presented to the state court. (*Id*. at 25, n.17).

## III. Legal Standards

### A. Motion to Alter or Amend

A court may alter or amend its judgment if the petitioner demonstrates manifest errors of law or fact. *Arthur v. King*, 500 F.3d 1335, 1143 (11th Cir. 2007). The decision to alter or amend is committed to the sound discretion of the district judge. *Lawson v. Singletary,* 85 F.3d 502, 507 (11th Cir. 1996). A court may grant a motion to alter or amend only if there was: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice. *See Wendy's Int'l, Inc. v. Nu-Cape Construction, Inc.*, 169 F.R.D. 680, 684-85 (M.D. Fl. 1996); *McLendon-Godfrey v. Berryhill,* 2019 WL 2491646 (M.D. Fl. 2019). A Rule 59(e) motion may also be appropriate where a court has misapprehended a party's position. *Wendy's Int'l, Inc.*, 169 F.R.D. at 686.

### B. Issuance of a Certificate of Appealability

To obtain a Certificate of Appealability (COA), a petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must demonstrate that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A petitioner "need not

show that he should prevail on the merits." *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (internal quotation marks and citation omitted).

## IV. Manifest error of law: AEDPA does not impose a bright-line rule barring previously unconsidered evidence of incompetency.

Mr. Gill moves this Court to alter or amend its opinion and judgment to find that it can consider evidence not previously presented to the state court and that the evidence demonstrates that Mr. Gill was incompetent. In its order dismissing Mr. Gill's habeas petition, the Court cited *Demosthenes v. Baal,* 495 U.S. 731 (1990), for the proposition that a state court finding of competency is entitled to a presumption of correctness. (Doc. 112, Order, at 38–39). The Court also found that it was "restricted in its review as AEDPA limits review of factual determinations to the evidence presented in the state court proceeding." (*Id*. at 45–46) (quoting *Cullen v. Pinholster,* 563 U.S. at 182 ("This backward-looking language requires an examination of the state-court decision at the time it was made.")). Mr. Gill maintains that there are three situations applicable here in which a federal habeas court may consider evidence not presented to the state court.

First, Mr. Gill respectfully suggests that the Court may have misapprehended caselaw holding that when a petitioner undertakes the burden of rebutting the state court findings of competency, he may offer new evidence. Second, Mr. Gill respectfully suggests that the Court may have overlooked caselaw that holds that when a petitioner diligently, but unsuccessfully, attempts to present the state court with evidence, he has not failed to present the evidence to the state court, and thus the federal court may consider the evidence in the first instance. Pursuant to the standards set forth in the relevant caselaw,

the evidence Mr. Gill has presented, including the findings of experts Dr. Blake and Dr. Crown and the FDOC medical records, demonstrates that Mr. Gill has rebutted the state court finding of competency by clear and convincing evidence. Third, Mr. Gill maintains that the exceptional circumstances of this case warrant review of new evidence of his competency.

### A. A petitioner may offer new evidence when rebutting a state court competency finding.

Supreme Court and Eleventh Circuit precedent holds that when a petitioner is rebutting the presumption of correctness that attaches to a state court finding of competency, he may present new evidence. In *Demosthenes v. Baal,* the issue before the Supreme Court was whether Baal was competent to waive challenges to his death sentence. 495 U.S. 731 (1990). The state court had heard the testimony of a psychiatrist and the testimony of a state prison official and had considered three written reports prepared by psychiatrists who had examined Baal. *Id.* at 733. Once in federal court, Baal submitted an affidavit prepared by a non-examining psychiatrist who alleged "there was reason to believe the petitioner *may not be competent*." *Id.* at 736. The federal district court found that there was an absence of "meaningful evidence" of incompetency. *Id.* The federal appeals court granted a stay, and the Supreme Court reversed. The Supreme Court affirmed the district court below, holding that in the absence of "meaningful evidence" of incompetency, the petitioner was not entitled to a hearing. *Id.* (quoting *Whitmore v. Arkansas,* 495 U.S. at 166). Thus, in *Baal,* although the federal district court ultimately

concluded that the newly presented evidence was not sufficient to warrant an evidentiary hearing, it in fact considered the newly presented evidence.

Although *Baal* was a pre-AEDPA case, federal appellate courts apply it to cases subject to AEDPA. For example, the Eleventh Circuit relied on the reasoning of *Baal* in *Hauser ex rel. Crawford v. Moore*, 223 F.3d 1316 (11th Cir 2000). There, Hauser sought to waive challenges to his execution and proceed *pro se*, and the state court repeatedly found he was competent to do both. *Id.* at 1319. Without Hauser's permission, his mother and capital counsel filed a § 2254 petition in federal court, alleging, in part, that Hauser was not competent to waive federal habeas challenges to his death sentence. *Id.* at 1320– 21. On review, the Eleventh Circuit held that the state court's factual findings as to Hauser's competence were entitled to a presumption of correctness and that the factual findings established his competence. *Id.* at 1323. Notably, however, the Circuit stated that "[i]n order to rebut these findings, [petitioners] *must present clear and convincing evidence that Hauser is incompetent*." *Id.* (emphasis added). Thus, by placing the burden of proof on the petitioners, the Circuit suggested that federal habeas courts may consider the petitioners' evidence to rebut state court findings of competency, even if the evidence was not previously presented in state court.

The Eleventh Circuit also applied *Baal* in *Sanchez-Velasco v. Sec'y, DOC*, 287 F.3d 1015 (11th Cir. 2002). Sanchez-Velasco sought to abandon further challenges to his conviction and death sentence. The state court had ordered him evaluated and found him competent to dismiss his petition, which was affirmed on appeal. *Sanchez-Velasco*, 287 F.3d at 1021. Counsel, without Sanchez-Velasco's permission, filed a federal habeas

petition. The federal district court ordered Sanchez-Velasco evaluated by the same expert who had previously assessed him. When the expert again found Sanchez-Velasco competent, the federal court dismissed the petition. *Id.* at 1024. On appeal, the Eleventh Circuit affirmed the district court's conclusion that Sanchez-Velasco was competent but also emphasized that a petitioner may offer evidence to "clearly and convincingly establish the state court finding was erroneous when made." *Id.* at 1030. Moreover, the *Sanchez-Velasco* Court cited *Mata v. Johnson*, 210 F.3d 324, 332 (5th Cir. 2000), for the holding that "the district court erred in basing a competency determination on a twelve-year-old finding from state trial proceedings when there was extensive new evidence of incompetency." *Id.* The Circuit thus acknowledged that federal habeas courts can consider evidence of competency not previously presented to the state court.

### B.    If a petitioner does not fail to develop evidence in state court, the federal court may consider previously unconsidered evidence.

AEDPA codified the rules for when a petitioner may present previously unconsidered evidence. 28 U.S.C. § 2254(e)(2) provides that "[i]f the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim" unless the claim relied on new retroactive constitutional law or the factual predicate could not have been discovered previously and shows innocence.

In *Williams v. Taylor*, the Supreme Court addressed the above-quoted portion of § 2254(e)(2) and held that "a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the

{9}

prisoner's counsel." 529 U.S. 420, 432 (2000). The Supreme Court noted that this interpretation of § 2254(e)(2) was consistent with *Keeney v. Tamayo-Reyes,* 504 U.S. 1 (1992), which held that prisoners who are at fault for failing to develop the state court record are held to a higher standard before they will be permitted an evidentiary hearing in federal court. *Id.* at 433. The Supreme Court explained that the "question is not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts." *Id.* at 435. "Diligence for purposes of the opening clause [of § 2254(e)(2)] depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court . . . ." *Id.* The Supreme Court specifically rejected a "no-fault standard." *Id.* at 432. Instead, all that *Williams* requires is "diligence." *Id.* at 435.[3] The *Williams* holding was recently affirmed by the Supreme Court in *Shinn v. Ramirez*, 142 S.Ct. 1718, 1735 (2022).

Applying *Williams* to Mr. Gill's case, post-conviction counsel did not fail to develop the evidence of Mr. Gill's brain defect and how it affected Mr. Gill's reasoning and behavior. Post-conviction counsel sought a hearing regarding Mr. Gill's competence to waive challenges to his capital conviction and sentence. Counsel sought to admit Mr. Gill's

---

[3] For examples of findings of diligence, see *Davis v. Lambert,* 388 F.3d 1052, 1060 (7th Cir. 2004) (applying *Williams* and holding that *pro se* petitioner was diligent when he sought an evidentiary hearing, described anticipated testimony, and explained that he did not present affidavits because the witnesses had been displaced due to the rehabilitation of a public housing property where they lived); *McNair v. Haley,* 97 F.Supp.2d 1270, 1278–80 (M.D. Ala. 2000) (applying *Williams* and finding no failure to develop the factual basis of claim when state court denied funds for an expert, denied expert access to prison to interview petitioner, and overruled objections to these denials).

medical records showing his incompetence. (Doc. 30, Petition, at 91–94; Doc. 30-3, Appx. 0032–0051). Counsel diligently attempted to develop evidence showing Mr. Gill's incompetency to waive post-conviction. *See Williams*, 529 U.S. at 435 ("Diligence . . . depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court[.]"). However, the post-conviction court acquiesced to Mr. Gill's insistence that the records not be admitted and prohibited counsel from questioning the experts about how their opinions would change in light of the medical records. (Doc. 30, Petition, at 90–92). Here, there was no "lack of diligence, or some greater fault, attributable to . . . the prisoner's counsel" that led to a failure to develop this evidence pursuant to 28 U.S.C. § 2254(e)(2) and *Williams*.

Mr. Gill acknowledges that during a hearing when the state court asked whether he wanted his medical records released, he responded in the negative, which could be perceived as a lack of diligence on his part. (Doc. 30, Petition, at 91–92). However, Mr. Gill was laboring under a significant brain injury that fueled oppositional and aggressive behavior and clouded his judgment. Mr. Gill was profoundly disturbed during the post-conviction proceedings. However, he later mailed counsel a notarized consent to release his medical records. (Attachment A, Notarized Consent). Thus, Mr. Gill himself was diligent. *See Williams, supra,* noting fault could be attributable to the prisoner *or* prisoner's counsel.

**C. The Court may consider the previously unpresented evidence due to extraordinary circumstances.**

To the extent the Court may find that Mr. Gill or post-conviction counsel were not diligent, extraordinary circumstances may still permit this Court to consider this evidence. In *Maples v. Thomas,* the Supreme Court held that fundamental fairness may require cause to excuse development of the facts where the petitioner is "disarmed by extraordinary circumstances quite beyond his control." 565 U.S. 266, 289 (2012). On remand from the Supreme Court, the Eleventh Circuit ruled that Maples was not "at fault" for the failure to develop the facts. *Maples v. Comm'r Ala. Dep't Correction,* 729 F. App'x 817, 821 n.5 (11th Cir. 2018). This Court has already found extraordinary circumstances exist sufficient to warrant tolling the statute of limitations. Extraordinary circumstances also warrant this Court's consideration of the previously unconsidered evidence.

**D.  The previously unconsidered evidence demonstrates that Mr. Gill was incompetent during both trial and during post-conviction proceedings**.

When the previously unpresented evidence is considered, Mr. Gill has rebutted the state court findings of competency to proceed by clear and convincing evidence. Neurologist Pamela Blake, MD, found as follows:

> In my opinion, it is not possible for a person with the characteristics that Mr. Gill exhibits, due to his significant brain lesion, to be rational. His long behavioral history supports this position. In my opinion, he is not, and has never been competent to proceed at trial or in post-conviction proceedings, due to the neuropsychiatric effects of his neurological condition. The neurobiological underpinnings of Mr. Gill's inability to process information or apply information to himself in a meaningful way, and his recurrent and bizarre incidents of self-harm, cannot be compatible with rational thinking.
>
> …
>
> Mr. Gill most likely cannot exhibit the same emotional, defensive response to emotional stimuli, thus scenarios that may be presented to him

by an attorney with varying levels of negative outcome to him may not be fully understood.

Mr. Gill's abnormal processing emotional stimuli, likely including his own emotions, will lead at times to distrust of his lawyers' motives and antagonism toward his lawyers. This was evident most clearly when he spit on his attorney in a courtroom and has also been exhibited repeatedly in his attempts to have attorneys removed from his defense.

In conclusion, it is my opinion that Ricardo Gill's emotional state, conduct and decision making over his lifespan have been driven by the presence of a large, congenital vascular tumor in the left temporal lobe, the area of the brain containing structures that are critical for the processing of emotions and for behavioral control, as well as higher level functions such as processing abstract information and language, among many others. The large vascular tumor has resulted in profound behavioral abnormalities and has also prevented Mr. Gill [] from being able to engage in rational thinking or decision-making or being able to consult with an attorney.

(Doc. 30-1, Nov. 4, 2019 Report, Appx. 0012–0013).

Neuropsychologist Barry Crown, PhD, administered neuropsychological tests to Mr. Gill, who scored in the bottom 0.1 percentile on general reasoning. Dr. Crown also opined that Mr. Gill was not competent to assist his attorneys. (Doc. 81-2, Sept. 24, 2021 Report, Appx. 0012, 0015). These expert findings, coupled with Mr. Gill's life history of bizarre, impulsive actions, many of which were self-destructive, reveal that Mr. Gill is incompetent.

Dr. Blake's report also rebuts the state court findings of competency to waive challenges to his capital convictions and death sentences by clear and convincing evidence. Dr. Blake reviewed the prison medical records from 2009 to 2010—covering the period when Mr. Gill suffered a massive brain bleed and required surgery—and concluded that

Mr. Gill lacks the capacity to appreciate his position or to make rational choices. He suffers from a mental defect that affects his capacity to make rational choices. The irrationality of his decision-making is evidenced not only in the attempts to waive his rights to counsel and further appeals, but

also by his immediate change of mind in a letter written by Mr. Gill on July 1, 2011—the day after the hearing—in which he indicates his desire "that appeals continue" and with a change of counsel. *** The resulting tissue injury [from the brain bleed] would have led to an impairment in higher cognitive and emotional processes that would have been highly relevant to decision-making necessary for the consequences of matters pertaining to the appeals process and the right to counsel. *** In summary, Mr. Gill's medical condition and the symptoms caused by it clearly would have affected his ability to knowingly and voluntarily waive his appeals and his right to counsel.

(Doc. 81-2, Sept. 20, 2021 Report, Appx. 0008–0009).

In *Rees v. Payton*, 384 U.S. 312 (1966), the United States Supreme Court addressed whether a death row inmate, alleged by counsel to be incompetent, should have been allowed to withdraw his petition for a writ of certiorari from the denial of habeas corpus relief. The Supreme Court directed the district court to determine whether the inmate had the "capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he [was] suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises." *Rees*, 384 U.S. at 314. Here, the opinions of Dr. Blake and Dr. Crown, as well as the prison medical records, demonstrate that Mr. Gill suffers a brain defect. The expert opinions show that Mr. Gill's brain defect affected his capacity to waive challenges to his death sentence. They also show that Mr. Gill suffers a defect which affects his capacity in the premises. Mr. Gill is incompetent pursuant to the standard set forth in *Rees*.

Mr. Gill moves this Court to alter or amend its opinion and judgment to consider the previously unpresented evidence, which shows that Mr. Gill was incompetent to proceed and incompetent to waive challenges to his death sentence. Alternatively, as

discussed below in Part VII, absent the grant of relief Mr. Gill asks the Court to alter or amend its judgment and memorandum opinion to grant a COA on this issue.

## V.     Manifest error of fact: Mr. Gill was incompetent because he was unable to maintain a relationship with counsel.

Mr. Gill moves this Court to alter or amend its opinion and judgment to find he was incompetent at the time of trial because he was unable to maintain a relationship with or assist counsel. A key component of a defendant's competency to proceed is his ability to maintain a relationship with, consult with, and assist counsel. *Dusky v. United States*, 362 U.S. 402, 402 (1960); *Drope v. Missouri*, 420 U.S. 162, 172 (1975). In its order dismissing Mr. Gill's habeas petition, the Court concluded that Mr. Gill "could assist counsel if he chose to do so." (Doc. 112, Opinion, at 44, 100). Mr. Gill respectfully suggests that the Court misapprehended the record as to whether Mr. Gill was able to assist counsel. As discussed *supra*, Dr. Blake found that Mr. Gill's brain defect caused him not to process emotions in the normal manner. Dr. Blake found that this inability rendered Mr. Gill unable to consult with an attorney. (Doc. 30-2, Nov. 4, 2019 Report, Appx. 0001–0013; Doc 81-2, Sept. 20, 2021 Report, Appx. 0001–0010).

However, Mr. Gill is still entitled to relief even if Dr. Blake's findings are not considered, because the state court record itself contains evidence that demonstrates Mr. Gill's inability to consult with counsel. Dr. Waldman's December 23, 2004 report discusses Mr. Gill's arteriovenous malformation (AVM). In the report, Dr. Waldman explained that "there is the phenomenon of interictal (between seizures) personality change which is consistent with Mr. Gill, his violence, demeanor of continual anger, and defiance

regardless of whether it would help him or not." (Doc. 72-2, Dec. 23, 2004 Report, at 16). Dr. Waldman also explained that "there is the possibility that he has no more control over his aggression than an amygdyalized animal." (*Id*.). Dr. Waldman's testimony is also in the state court record. In his testimony, Dr. Waldman explained that "episodes where [Mr. Gill] has assaulted corrections officers just out of the blue without provocation, where he has spat upon his attorney. I think it's reasonable to say that those could very possibly be rage attacks." (Doc. 60-7, Transcript, at 100–01). The conclusion that Mr. Gill was unable to maintain a relationship with or assist counsel is supported by Dr. Waldman's finding that Mr. Gill's brain defect rendered him comparable to an "amygdyalized animal." It is also supported by Dr. Waldman's testimony that when Mr. Gill spit at counsel, he was having a "rage attack," which was beyond his control.

Given Mr. Gill's physiological vulnerability to rage attacks, and his physiologically driven demeanor of defiance, which Dr. Waldman opined were beyond his control, Mr. Gill was unable to overcome his brain defect and make a reasoned choice whether to consult with his attorneys. The paranoia, distrust, demeanor of anger, and defiance are attributable to Mr. Gill's brain defect, and it was these attributes that caused Mr. Gill not to be able to assist counsel. Indeed, Mr. Gill was unable to maintain a relationship with counsel and sought to remove every attorney the state court appointed to represent him. Accordingly, Mr. Gill was incompetent pursuant to the standard set forth in *Dusky* and *Drope*.

Mr. Gill moves this Court to alter or amend its opinion and judgment to find that he was incompetent at the time of trial because he was unable to maintain a relationship with

or assist counsel. Alternatively, as discussed below in Part VII, absent the grant of relief Mr. Gill asks the Court to alter or amend its judgment and memorandum opinion to grant a COA on this issue.

## VI. Manifest error of law: Trial counsel ineffectively and prejudicially failed to investigate and present evidence of Mr. Gill's incompetence and ineffectively acquiesced to the trial court's order that Mr. Gill proceed *pro se*.

Mr. Gill moves this Court to alter or amend its opinion and judgment to find that trial counsel was ineffective for failing to adequately investigate Mr. Gill's incompetence and for failing to object to counsel's removal from the case, which resulted in prejudice.

### A. Trial counsel failed to investigate Mr. Gill's incompetence

In his habeas petition, Mr. Gill alleged that trial counsel ineffectively failed to investigate and present evidence of his incompetence. (Doc. 30, Petition, at 76–82).[4] In addressing this claim, this Court noted the "numerous evaluations and assessments by experts" and that the experts who conducted the courthouse group assessment reported that Mr. Gill cooperated with counsel. (Doc. 112, Order, at 63). The Court concluded that trial counsel's performance did not undermine the "proper functioning of the adversarial process that Petitioner was deprived of a fair proceeding." (*Id*. at 64–65).

The Court reviewed this claim without considering the opinions of Dr. Blake and Dr. Crown and without considering the prison records. Claims of ineffective assistance of counsel often hinge on evidence outside of the trial court record. *Martinez*, 566 U.S. at 13.

---

[4] In his habeas petition, Mr. Gill recognized that his ineffective assistance of counsel claim was defaulted in state court but explained that *Martinez v. Ryan*, 566 U.S. 1 (2012), established cause for the failure to exhaust. (Doc. 30, Petition, at 81–82). The Court reviewed the merits of the claim without conducting an analysis pursuant to *Martinez*.

But in this case, trial counsel's ineffectiveness and the resulting prejudice can be gleaned from the state court record.

Mr. Gill initially was able to maintain a relationship with trial counsel. However, in February 2005, Mr. Gill became unable to maintain a relationship with counsel. (Doc. 42-13, Transcript, at 110). At the competency hearing on April 15, 2005, counsel should have been aware of Dr. Waldman's December 2004 report explaining the effect of the brain defect on Mr. Gill.[5] Counsel already had in his possession Dr. Cadiz's 2005 report in which she found that while Mr. Gill has a factual understanding of his case, he does not have an awareness of the meaning and consequences of his case. (Doc. 60-7, April 14, 2005 Report, at 375). Dr. Cadiz noted that Mr. Gill was unable to make decisions about his case or to apply information to himself. (*Id*. at 374). Dr. Cadiz noted Dr. Waldman's discovery of the AVM. (*Id*. at 366–67). Dr. Cadiz also noted that if Mr. Gill's problems with understanding the consequences of his case or making decisions about his case were due to his brain defect, he would likely not be made competent. (*Id*. at 375).

Thus, trial counsel was aware of two experts who noted Mr. Gill's brain defect and its effect on him. The reports by Dr. Waldman and Dr. Cadiz were red flags that would have alerted effective counsel to Mr. Gill's incompetence and the need for additional investigation. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances . . . ." *Strickland*, 466 U.S. at 691. Here, it was unreasonable for trial counsel to fail to conduct *any* investigation into

---

[5] Dr. Waldman's December 2004 report was prepared in anticipation of Mr. Gill going to trial and raising an insanity defense. (Doc. 72-2, Report, at 12–16).

Mr. Gill's brain defect and its effects on his competency. Counsel could have spoken to Dr. Cadiz to ask her to clarify her report. Or, counsel could have spoken to Dr. Waldman who could have explained how the AVM produces a demeanor of defiance and causes rage attacks. Or, counsel could have done both. In any event, counsel's failure to conduct any investigation into Mr. Gill's brain defect and its effect on his competency was unreasonable under the circumstances and therefore ineffective.

Mr. Gill's incompetence is also manifested in the state court record. Dr. Waldman found the brain defect and later, after Mr. Gill was *pro se* and had pled guilty, explained that it causes rage attacks and a demeanor of defiance. Dr. Waldman was called to testify prior to the trial court imposing sentence. Dr. Waldman testified that Mr. Gill was competent, but his opinion did not address the prong of competency that requires the accused to be able to assist counsel. In fact, Dr. Waldman's opinion suggests just the opposite: Dr. Waldman specifically noted that the incident where Mr. Gill spit at counsel was likely due to a rage attack. In other words, if Dr. Waldman had been aware that a criminal defendant's competency includes the ability to maintain a relationship with and assist counsel, he may have found Mr. Gill incompetent.

Trial counsel did not test the adversarial process as to competency. He did not cross-examine the experts at the courthouse group competency assessment. When he had evidence suggesting that Mr. Gill had a brain defect that affected his ability to relate to people or assist counsel, counsel failed to bring that to light. Counsel ignored the red flags suggesting investigation was warranted and acquiesced in forgoing a competency hearing. This ineffectiveness resulted in prejudice to Mr. Gill. Had counsel investigated Mr. Gill's

brain defect, he could have marshalled before the trial court the evidence that Mr. Gill was incompetent.

**B. Trial counsel ineffectively acquiesced to his own removal from the case.**

If defense counsel is absent from a court proceeding, counsel has a duty to learn what happened in court during his absence.[6] Here, after Mr. Gill spit at trial counsel, trial counsel left the courtroom to go to the restroom. While counsel was gone, the trial court *sua sponte* removed counsel from the case. When counsel returned to the courtroom, the trial court informed trial counsel of his removal, counsel did not object or inquire as to what had transpired in his absence. Instead, he acquiesced to his removal from the case without objection. (Doc. 60-7, Transcript, at 241–42). Trial counsel should have objected to his *sue sponte* removal from the case while he was absent from the courtroom. The trial court's removal of counsel violated *Johnson v. Zerbst,* 304 U.S. 458, 468-69 (1939), because Mr. Gill did not knowingly and voluntarily waive counsel. The trial court later attempted to cure the error by asking Mr. Gill if he wanted standby counsel to represent him while in court. However, standby counsel serves a distinctly different role than counsel appointed to represent the defendant. Standby counsel, by definition, would not have investigated the facts of the case, as *Strickland* requires. Thus, the trial court's offer of standby counsel to represent Mr. Gill for specific court proceedings does not obviate the constitutional violations that occurred when the trial court *sua sponte* removed counsel.

---

[6] *Cf. United States v. Cronic*, 466 U.S. 648, 659 (1984) (The absence of counsel during a "critical stage" of a criminal proceeding is a *per se* Sixth Amendment violation requiring reversal and does not require a showing of prejudice and is not subject to a harmless error analysis.).

Mr. Gill moves this Court to alter or amend its opinion and judgment to find that counsel was ineffective for failing to adequately investigate and present evidence of Mr. Gill's incompetence and for failing to object to counsel's removal from the case, resulting in prejudice. Alternatively, as discussed below in Part VII, absent the grant of relief, Mr. Gill asks the Court to alter or amend its opinion to grant a COA on these ineffective assistance of counsel issues.

### C. *Martinez v. Ryan* **establishes cause for failure to exhaust.**

In prior briefing, Mr. Gill argued that pursuant to *Martinez v. Ryan,* 566 U.S. 1 (2012), he established cause for failure to exhaust certain of his constitutional claims. (Doc. 30, Petition, at 71) (*Martinez* established cause for failure to exhaust trial counsel ineffectiveness related to substantive competency)); (*Id*. at 75–76 (*Martinez* established cause for failure to exhaust trial counsel ineffectiveness related to trial court's *sua sponte* removal of counsel)); (*Id*. at 104, 106, 107 (*Martinez* establishes cause for failure to exhaust trial counsel ineffectiveness)). Mr. Gill also urged the Court to consider his previously unpresented expert testimony and medical records pursuant to *Martinez* and *Williams*, 529 U.S. 420. (Doc. 30, Petition, at 117–26).

In its order dismissing Mr. Gill's petition, the Court did not discuss *Martinez*, although *Martinez* continues to apply in habeas proceedings. *Shinn v. Ramirez,* 142 S.Ct. 1718, 1728 (2022). In *Shinn,* the Supreme Court addressed the interplay between *Martinez,* which holds that if a petitioner demonstrates ineffective assistance of post-conviction counsel, he may establish cause for failure to exhaust an ineffectiveness-of-trial-counsel claim, and 28 U.S.C. § 2254(e)(2), which provides that if "the applicant has failed to

develop the factual basis of a claim in State court proceedings," the federal court may not hold an evidentiary hearing as to the claim. The Supreme Court held that § 2254(e)(2) must be satisfied before the federal district court could hold an evidentiary hearing on a defaulted ineffective assistance claim. *Id.* at 1738.

In Mr. Gill's case, he has nonetheless established ineffective assistance of counsel based on the state court record. He further offers evidence of Mr. Gill's personal diligence. Thus, *Shinn* does not bar this Court from considering his previously unpresented evidence.

Mr. Gill notes that other federal district courts are carefully addressing *Shinn* and its implications. In *Mullis v. Lumpkin,* 47 F.4th 380, 393–94 (5th Cir. 2022), the Fifth Circuit granted a COA on whether ineffectiveness of post-conviction counsel could be a cause external to the petitioner such that the federal court could consider previously unpresented evidence. In *Mothershead v. Wofford*, the Western District of Washington court originally found that *Shinn* would not bar an evidentiary hearing because the prisoner herself had demonstrated diligence, but then granted the warden's motion to certify the issue for interlocutory appeal. Case 3:21-5186-MJP, 2022 WL 2755929 (W.D. Wash. July 14, 2022). In certifying the case for interlocutory appeal, the district court reasoned that

> the legal issue resolved by the Court in the Order is novel and requires consideration and application of a new Supreme Court decision—*Shinn*. The legal issue also presents novel considerations as to the diligence inquiry under § 2254(e)(2) that do not appear to have been resolved by any appellate court. *** As such, the Court finds that its Order makes a novel determination on the controlling legal question on which fair-minded jurists could disagree.

*Id.* at *2 (case now pending before the Ninth Circuit in *Mothershead v. Wofford*, Case 22-35756). Thus, jurists of reason have already concluded that the question of *Shinn*'s scope

and application are questions deserving of further review. Mr. Gill moves this Court to alter or amend its judgment and memorandum opinion to grant a COA on *Shinn*'s application to his case because he acted diligently and extraordinary circumstances exist.

## VII. The Court should alter or amend its judgment and memorandum opinion to grant a COA.

Mr. Gill urges the Court to alter or amend its opinion denying a COA. The Court conducted a merits analysis of Mr. Gill's claims and then denied a COA after concluding that Mr. Gill had not made the required showing for a COA. (Doc. 112, Order, at 99, n.41). Mr. Gill contends that the standard for the issuance of a COA is met here.

The determination of whether to grant a COA is distinctly different from the analysis of a habeas petition's merits. A claim warrants issuance of a COA if it presents a "question of some substance," *i.e.*, an issue (1) that is "debatable among jurists of reason"; (2) "that a court could resolve the issues [in a different manner]"; (3) that is "adequate to deserve encouragement to proceed further"; or (4) that is not "squarely foreclosed by statute, rule or authoritative court decision, or [that is not] lacking any factual basis in the record." *Barefoot*, 463 U.S. at 893 n.4, 894 (internal quotation marks and citation omitted); *see also Slack*, 529 U.S. at 483–84 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'").

The Supreme Court reaffirmed its holdings from *Barefoot* and *Slack* in *Miller-El v. Cockrell*, when it reversed the Fifth Circuit Court of Appeals' denial of a COA. 537 U.S. 322, 327 (2003). The Supreme Court reversed because the Fifth Circuit had improperly interjected the requirements of 28 U.S.C. § 2254 into the COA determination. Specifically, the Fifth Circuit had assumed that in deciding whether a COA should issue, it was "required by § 2254(d)(2) to presume the state court findings correct unless [it] determine[d] that the findings result[ed] in a decision which is unreasonable in light of the evidence presented." *Id*. at 330. In reversing, the Supreme Court explained that

> [t]he COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits. We look to the District Court's application of AEDPA to petitioner's constitutional claims and ask whether that resolution was debatable amongst jurists of reason. This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it.

*Miller-El,* 537 U.S. at 336–37. Accordingly, when a court denies a COA based on the conclusion that the claim would lose on the merits, the court has imposed too high a burden, because obtaining "a COA does not require a showing that the appeal will succeed." *Id.* "Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that the petitioner will not prevail." *Id.* at 338. "The holding in *Slack* would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail. It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief. After all, when a COA is sought,

the whole premise is that the prisoner 'has already failed in that endeavor.'" *Id.* at 337 (quoting *Barefoot*, 463 U.S. at 893, n.4).

If the Court reaffirms the denial of relief, it should nonetheless grant a COA. Under the appropriate threshold analysis described above, the Court's resolution of these issues can be reasonably debated, and, separately, those issues deserve to proceed to a full appeal. *See Miller-El,* 537 U.S. at 336; *Slack,* 529 U.S. at 483–84. Accordingly, Mr. Gill moves the Court to alter or amend its order and judgment to grant a COA.

## CONCLUSION

In light of the foregoing, the Court should alter or amend its memorandum opinion and judgment and grant relief. Alternatively, the Court should grant a COA.

<div style="margin-left: 40%;">

Respectfully submitted,

FEDERAL DEFENDER SERVICES
OF EASTERN TENNESSEE, INC.
800 S. Gay Street, Suite 2400
Knoxville, TN 37929
Phone: (865) 637-7979
Fax: (865) 637-7999

BY:   /s/Susanne Bales
Susanne Bales, TN BPR No. 17868
Asst. Federal Community Defender
Susanne_Bales@fd.org

</div>

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served electronically by the Court's CM/ECF service on November 10, 2022.

/s/Susanne Bales
Susanne Bales